Next to argument in 21-2007, Amazon.com v. Attorney General James Mr. Schwartz, whenever you are ready. I'm going to discuss three independent reasons why the district court decision should be reversed, and then I'd like to offer a practical suggestion to the court. Number one, under Sprint, the district court decided that the akin to criminal prosecution exception applied here, and therefore, the court opened the gateway to abstention. The akin to criminal prosecution exception does not apply for at least three reasons, Your Honors. Number one, under Sprint, and as explained in two of this court's subsequent decisions, Helms Realty and Neroni, the key characteristic to something that is akin to a criminal prosecution, which again is a very narrow exception to the court's otherwise unflagging duty to exercise its jurisdiction, is that it seeks a penalty. This case in no way, shape, or form seeks a penalty. It seeks typical civil relief, back pay, emotional distress, liquidated damages, injunctive relief, equitable relief. None of those things are penalties. Number two, the other thing that Sprint teaches us is to look at who routinely brings this type of action in order to figure out whether it's akin to a criminal prosecution. The people who routinely bring actions for violations of the New York labor law are New York employees, and in fact, two of the employees at issue at central to the Attorney General's complaint have brought their own civil causes of action. The Attorney General says that her authority under Section 6312 to essentially bring a cause of action for any other violation makes it uniquely the Attorney General's violation. If that were true, any tort, common law violation, or statutory violation in the state of New York would fit within this narrow exception, which disobeys the command of Sprint. Section 63, paragraph 12, doesn't just say you could bring a suit for any violation of any law in New York, it says if there are repeated fraudulent or illegal acts, the Attorney General can apply the name of the state of New York for an order enjoining continuance of those acts, directing restitution of damages, and canceling the corporate certificate of the business, right? That's correct, Your Honor. That does not seem like it is saying that the Attorney General simply stands in the shoes of someone who might sue under the provisions. It's saying if the Attorney General identifies sort of systematic, repeated violations, some kind of ongoing pattern of behavior that is in violation of some other statute, it can sue to enjoin it or even to revoke a company's corporate charter. That seems like it's a penalty, isn't it? So even though one employee might bring a lawsuit for a violation of the statute in one instance, an individual couldn't bring this kind of a lawsuit under the executive law, right? That's correct, Your Honor. In this case, the Attorney General does not seek cancellation of Amazon's right to do business. Again, the Attorney General seeks only typical relief that a private plaintiff can seek. But they do seek an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, right? The courts have repeatedly held that injunctive relief is not a penalty. That is a relief given at equity, and equity actually does not award penalties. So therefore, the injunctive relief does not take this into the category of akin to a criminal prosecution. So injunctive relief is never a penalty? It is not, Your Honor. Injunctive relief is a forward-looking, equitable remedy. It is not a penalty. Don't we have cases applying under abstention where there is injunctive relief, like shutting down the adult movie theater, maybe, or removing the kids from the home? And in those cases, it is akin to the criminal responsibilities of the state. Right. So injunctive relief could be a penalty, as long as it's similar to some kind of a criminal penalty, or it works in conjunction with some kind of a criminal statute. Post-Sprint, Your Honor, I don't think that is the case. If you look at Sprint, it says it must be a penalty, and then if you look at this Court's post-Sprint decisions, including Helms Realty, there was a civil money penalty, a statutory penalty, and Neroni, attorney discipline and treble damages, more than the actual damages. Again, the injunctive relief to enjoin future violations is not a penalty. That is a relief in equity. One of the things that's interesting to me about this framework that you're describing is that if you go back and you look at the Dayton Schools case, or you look at the Diamond D case, or you look at all these cases involving civil enforcement of civil provisions, there's no analysis by the court of the nature of the penalty and whether it qualifies as compensatory versus a penalty. They look at the nature of the proceeding as a whole, and whether it's the state officer conducting an investigation and bringing a proceeding to address the harm. Is this framework that you're describing explicit somewhere that I'm missing? Your Honor, in Sprint itself, the Supreme Court makes clear that a penalty is the gravamen of this narrow exception akin to a criminal proceeding. And then, Your Honor, if we look at the other attributes of the proceeding, as you've just suggested, who is it routinely brought by? Again, labor law violations routinely brought by private plaintiffs. And does the civil proceeding have other attributes of a criminal proceeding? Burden of proof, Brady evidence obligations. This proceeding has none of those things. And, Your Honors, if I could move to the second error. Even if you found that it fit within this narrow exception to the court's duty to exercise its jurisdiction, the court below did not consider at all questions of preemption. And in fact, in footnote four of the district court's decision, Judge Kogan said, absent direction from this court, he was not doing so. I would submit, Your Honors, that under the Supreme Court's decision of Public Utilities Commission of Ohio, New Orleans Public Service, and then the all circuits to have considered it subsequent, have found that if the preemption is readily apparent, the court should exercise its jurisdiction. This court suggested it was sympathetic with that view in In Re Pan Am, albeit in a bankruptcy context. But the court said, with regard to abstention doctrine in general, preemption was important to consider. Here, at a minimum, the decision should be vacated and remanded for the district court to consider preemption in the first instance. But I would say, Judge Robinson? Yeah, I'm going back to the prior point, but in the be careful what you wish for category. I'm thinking through, if we were to rule in your favor on the first basis and address the merits, and we disagreed with you on the merits, and we concluded that there wasn't preemption. You now have a New York State Appellate Court decision saying there is preemption, they can't proceed with this. A, wouldn't that be just an advisory opinion? And B, if we say no, there isn't preemption, how does that match up with what's happening in the real world in the New York proceeding? Absolutely, Your Honor. So the question before this court is slightly different. It's whether preemption is readily apparent, not whether there actually is preemption. Further, the Attorney General has collaterally estopped- No, no, I understand the question for younger abstention is whether it's readily apparent. But you've asked us to knock out younger abstention on multiple grounds, one of which is that this isn't in the first instance the kind of case that would qualify. In that circumstance, we would then get to the question of preemption on the merits, wouldn't we? Your Honor, you would get to whether preemption was readily apparent, not whether it exists. And whether it exists has already been conclusively determined, and the Attorney General has collaterally estopped from arguing otherwise by the unanimous decision of the First Department. And that's under this court's doctrine- Well, that's appealable, right, that decision? Or you could petition to the Court of Appeals? Not at this time, Your Honor, because the counterclaims remain alive. So the only thing that can happen is the Attorney General can ask for rehearing by the First Department. And the Attorney General- But eventually, on final judgment, they could go to the New York Court of Appeals. That is correct, Your Honor, which- So what's the next step in the appellate division, in the state case? In the state case, the Attorney General has until June 9th to seek a further rehearing before the First Department. Which leads me to my practical suggestion, which is that this court should hold the appeal in abeyance until the appellate proceedings are concluded in state court. But you're saying that the case would still be ongoing, it would go back to the trial court, and we wouldn't get an answer from the New York Court of Appeals until the counterclaims are resolved. That's correct, Your Honor. So what would that tell us if we just wait for the appellate proceedings to be resolved? Well, if the appellate proceedings are resolved in Amazon's favor, it may be that we dismiss the counterclaims. And the issue is at least narrowed and potentially- And the whole thing could be resolved, but then at that point, the Attorney General could go to the New York Court of Appeals. That's correct, Your Honor. And the New York Court of Appeals could disagree with the appellate division about the preemption question. That's correct, Your Honor. Wouldn't your counterclaims be moot? Sorry. Go ahead. Wouldn't your counterclaims become moot if the current appellate decision in New York stands? At this time, we think the counterclaims are not moot because we sought broader relief. Recall, Your Honor, that we brought this action before the Attorney General had even initiated suit because she was conducting an investigation beyond her power. And under Shaw, we asked the federal court to enjoin that. If, in fact, the case is dismissed, well, the case has been dismissed, but if, in fact, the Attorney General loses further appellate review or gives up further appellate review, at a minimum, the issues would be narrowed and they might be moot. Which is why I suggest as a practical matter that the court hold the appeal in abeyance. Can I ask another question about that decision? So the appellate division thought that the labor law section 200 claim that the Attorney General brought was moot because the public health guidance about COVID-19 had been repealed by the state agencies. Do you agree with that decision? I do, absolutely. So in terms of the labor law section 200 claims in this case, do you think that they are also moot? I do, Your Honor. So we're really only talking about the retaliation claims? I'm going to ask the Attorney General for her position as well. But your position is we should regard that claim as moot and we're only talking about the retaliation claims. I do agree with that, Your Honor, subject, of course, to whatever the Attorney General says she's going to do. The Attorney General tried to convince the trial judge to ignore the mandate of the appellate court and keep the section 200 claim alive as to disgorgement. The trial judge wouldn't do that. So I can't say that I don't need this relief because I don't know what the Attorney General is going to do. But I do agree with the principle that you just stated. And with respect to the NLRB preemption, again, I think it is readily apparent, which is the question that the federal court would have to address, not whether it exists, but whether it's readily apparent. The first department unanimously found that it was. Attorney General James, at the beginning of this matter, announced that the NLRB should investigate. She knew it was readily apparent. And two of the readily apparent cases that we cite to this court in the brief, Chalk and Bud Antle, I think, are closely analogous to the situation that we have here. And if I might, Your Honors, just to address the third error that I believe the district court committed, and that is applying the wrong standard to our claim of bad faith. We sufficiently pled bad faith under Cullen and Diamond. And the question is not, as the district court framed it, whether the Attorney General could succeed on her prosecution or on her case. But rather, whether it was animated by or brought in bad faith. And that is a question of subjective intent of the Attorney General. We certainly put in more than sufficient allegations under Twombly to allege bad faith. A rush to judgment, a predetermination of the outcome, a leak of the predetermination, a tweet and removal of the tweet by the supervisor, the deputy bureau chief. The Attorney General herself acknowledging that federal law governed in her predetermination letter and in her press release calling on the NLRB to investigate the letter saying these were violations of the ocean. So with the exception of the statement that, the sensible acknowledgement that federal law governs, which maybe you're right, that might show bad faith. The other things about a leak or about being aggressive in enforcement action, that's consistent with thinking that you have a viable, valid enforcement action. I would disagree, Your Honor, based on these allegations which are entitled to a presumption of truth. And that is that on the day that Mr. Smalls was fired, the Attorney General announced that that action was shameful and disgraceful before any investigation was conducted. Then a predetermination letter that said regardless of the outcome, you should restore this person to his employment. The application of a double standard while the Attorney General stood before other courts and argued that the measures that the New York State courts were taking were sufficient to comply with section 200. For bad faith, sorry, I'm just, I'm out of time. Typically with bad faith, you have evidence not only of treating somebody badly or different, but a reason for doing so, right? You're tallying against them for exercising some constitutional right or you're harassing them for some reason. What's the allegation here as to the reason for what you're describing as unfair treatment? And here, Your Honor, the distinction is exactly in your question. At the pleading stage, we don't need evidence of someone else's state of mind. We need to plead sufficient circumstantial evidence that there could have been a bad faith state of mind. Ignoring contrary evidence from the sheriff, applying a double standard. What is the bad faith state of mind that could have been? What is the inference, I understand you don't have to prove it, but what's the inference that we would draw from the allegation? The inference would be a selective prosecution of Amazon for reasons other than the merits, Your Honor. When Amazon's standards were above and beyond what the Attorney General told other courts were sufficient, yet she announced from the beginning a pre-baked conclusion that Amazon was guilty. And then designed an investigation to get to that result. At least under Twombly and Iqbal, that is sufficient. We've developed more evidence in the state court, and we know discovery will show even more of the Attorney General's bad faith. I'll also comment the tweet. There's a consciousness of guilt that is reflected by someone leaking and then withdrawing it from the public domain. You don't do that unless you think you did something wrong. Prosecutorial discretion is not judicially reviewable. I mean, don't prosecutors often prioritize cases because of political reasons? And if the prosecution is meritorious, we say that it's okay, it's not bad faith. We're not going to say it's bad faith just because a state agency has enforcement priorities that might be affected by politics, would we? But in this court's precedence in Cullen and Diamond, the point is that if bad faith is sufficiently alleged, that is a reason for the federal court not to abstain. To go ahead and exercise its jurisdiction to determine whether- But still, that means that you're going to have prosecutions that occur in state court, and then federal courts determining whether the prosecutions look too political to those courts. And then deciding to consider whether to enjoin the prosecutions. And not for the bad faith, but for the preemption. In other words, it's just a reason to open the courthouse door, not abstain, exercise the court's unflagging obligation to exercise its authority over federal matters, Your Honor. But when you were describing bad faith, you said for reasons other than the merits. And I guess what I'm trying to figure out is there's a whole bunch of reasons other than the merits that you can imagine. Are all of those by definition bad faith? Right? Wanting to make an example of someone because they're a high profile company. Is that bad faith? No, I believe bringing a case for purposes of harassment, selectively pointing to somebody where the evidence before the attorney general was to the contrary. Remember, the only law enforcement official to visit was a sheriff who conducted multiple inspections, including unannounced, and found that all compliance obligations were complied with. You're describing all the evidence that you're pointing to that there's something going on besides the merits here. And what I'm trying to figure out is whether that's enough, or whether we have to have some inkling of what that something is. Because there may be things that are not bad faith, but are still not the merits, and then things that are bad faith that aren't the merits. I understand the distinction you're making, Your Honor, whether it's a choice of priorities or so forth. What I would say is under Twombly and Iqbal, and Cullen and Diamond, what we have alleged is sufficient to create a question about whether the attorney general was animated by an improper purpose. Again, announcing the conclusion- And the fact that you could raise such a question, even without having to show that it in fact motivated the attorney general. That's enough for the federal court not to exercise abstention and to get involved in the case. That's correct, Your Honor, because under Sprint, again, the court generally has an unflagging duty- So there's never a point at which you'd have to prove bad faith. You're just saying, all we have to do is raise a question that there might be bad faith, in which case we get an adjudication on the merits of the preemption claim. Well, or at least we're entitled to further discovery with respect to bad faith. And I would say the attorney general said in her briefs that we never ask the district court for discovery, and it's categorically untrue, Your Honor. I did it at oral argument, and it's in our papers before the district court. So what I'm saying is that under Twombly and Iqbal, we at least raise an inference of bad faith sufficient to move past the attorney general's motion to dismiss this action. It seems to me, if you'll excuse me, it seems to me that you are devoting a lot of time in the forward part of your argument to arguments that are not your stronger ones. Are you going to get to the preemption issue, which I think is closer to the heart of this case? Yes, Your Honor, I'm very happy to address the preemption issue. So let me address that in two parts. Number one, with respect to the National Labor Relations Act. I think preemption under the NLRA is readily apparent. The first department unanimously found that this action was preempted. Attorney General James again called on the NLRB to investigate. Chalk and bud ample are cases that are directly on point. And the standard under Garmon is whether it is clear or may fairly be assumed that these are matters within the jurisdiction of the NLRB. And then even if it is arguably within the jurisdiction of the NLRB, it is the NLRB's presumptive jurisdiction. And again, it's a presumption of preemption. Here we have the Bryson proceeding, which specifically deals with the same protected activities. It raises Mr. Smalls and Mr. Palmer as examples of additional alleged retaliation. That direct proceeding is pending before the National Labor Relations Board and before the United States District Court in the Eastern District under section 10J of the act. There, there is no question that it is readily apparent that the NLRB has exclusive jurisdiction. So is there any circumstance in which a state whistleblower provision is enforceable as against a company that has enough employees to be subject to the NLRBs? Absolutely, Judge Robinson. In this case, the protected concerted activity was literally the exact same activity they all engaged in together. Palmer, Smalls, and Bryson, which is protesting jointly for safety conditions. There are other cases, and in fact, I believe there's one cited in the Attorney General's brief, where it is an individual engaging in individual whistleblowing and not in protected concerted activity. Here- But in the whistleblower context, the law doesn't care whether you did it alone or whether you did it with other people. The issue is the reason why you were subjected to retaliation for making the complaint. Did you make the kind of complaint? In the labor board context, in the NLRB context, you don't really care about that. You care about the fact that it was an exercise of concerted activity. Aren't those two distinct sets of things that happen to overlap? But what you would be proving in the two proceedings are completely distinct. I would disagree, Your Honor. And again, the Supreme Court's been clear in Garmon, Jones, and Brown that it's the conduct being regulated and not the cause of action. So in this case, they are united. In the state proceeding, the question will be whether Mr. Smalls and Mr. Palmer were disciplined for engaging in the exact same protest that they stood side by side with Mr. Bryson. In the Bryson proceeding, the National Labor Relations Board is deciding whether Bryson was terminated for engaging in that exact same protest, and the NLRB has been asked to decide whether Smalls and Palmer were terminated or Smalls terminated Palmer discipline as corroborative evidence. The argument that the NLRB has made is the three men did the same thing so we can infer discrimination. It is the exact same question. The conduct being regulated is the same. There is the exact potential for conflict between the result in the NLRB and the result in the state court that Garmon was intended to prevent, that Jones was intended to prevent, that Brown was intended to prevent. This is about as clear of a case of NLRB preemption as there could be. And in fact, the unanimous first department said it literally did not require any further discussion. They then go on to discount the local interest exception, which I can address if the court would like. But they say this is so obvious of a risk of conflicting judgment that it cannot proceed. It is facially apparent that it is preempted. Can I ask about the preemption? So I understand you said about the section 200 claim that you think it's moot at this point, but let's say we thought that it wasn't moot. So the question about whether that claim is preempted goes to whether that there is an existing OSHA standard on point. But if we have to analyze whether the existing standards match up with the kind of relief that the attorney general is seeking, doesn't that mean preemption is not readily apparent? It requires some kind of a detailed analysis? Not at all, your honor. In this case, I think it's quite readily apparent. Literally all it requires is creating a chart, a box on Microsoft Word. If you look at the allegations in the complaint regarding masking, regarding cleaning and disinfection, and regarding notification of other employees of infections. And you line them up with 1910.132, personal protective equipment. These are federal regulations. 29 CFR 1910.134, respiratory protection. 29 CFR 1910.141, sanitation. And part 1904, record keeping and advising other employees of illnesses. But do you think that just occupies the field of coronavirus protections? At least there's- Whether there's something that's not covered by the existing standards that the attorney general is seeking in this action? These specific things that are sought in the attorney general's complaint match up precisely with existing OSHA standards. For that reason, under Gade, because New York does not have a state plan for the private sector, absolutely preempted. The trial judge in state court got this fundamentally wrong. What she said was, well, they have to have, OSHA has to have a regulation specific to COVID-19. That's not true. Respiratory protection and personal protective equipment don't have to delineate, here's the flu standard, here's the smallpox standard, here's the infections air standard. They all protect from that general category. And OSHA, under two different administrations, has repeatedly exercised its authority to cite employers for COVID hazards under those specific federal regulations. Can I ask what exactly the 200 claim is? And so when you're talking about whether it's akin to a criminal prosecution, you say, no, this is just like a regular tort claim. It's like something that employees could bring and so on. But then when we're talking about whether preemption is readily apparent, and whether it falls within the OSH Act's savings clause, you say, well, it's not just a regular tort claim, because they're seeking injunctive relief. And they're kind of reforming the practices of Amazon. So it's sort of like a regular tort claim, but it's not. I mean, aren't those two arguments of tension? They're not, Your Honor. They are misusing the section 200 claim to seek this extraordinary forward looking injunctive relief. That's not a penalty. I don't think it's authorized under state law, but that's not an issue that we've raised in this court. But in any event- But doesn't section 63 of the executive law allow them to seek injunctive relief for repeated acts of illegality? There are state law issues that prohibit them from doing it under section 200 as well as federal constitutional issues to impose non-binding guidance. But for example, under state law, the labor commissioner has to first put a notice on the affected area. It's not even designed for this kind of harm. And then the attorney general can seek a narrow injunction. Again, all- That's an argument that there isn't actually a violation of section 200, right? No, it's an argument that both that there's no violation and that the relief that they seek is unauthorized. There's a procedure by which the state can actually get injunctive relief. But that's what the commissioner needs to do, right? Doesn't executive law 63 separately authorize the attorney general to bring a lawsuit seeking an injunction? Not when there is a more specific statutory provision that requires these procedural hoops to be gone through before the attorney general can act at all, Your Honor. And in this case- Okay, wait a minute, just to go back to my question. So your argument is section 200 is really a regular tort claim, but they're using it in a way that's not like a regular tort claim by seeking this prospective injunctive relief. But that's still not akin to a criminal prosecution, and injunctive relief never can be. I mean, that's kind of a fine distinction, isn't it? That's absolutely right. You've correctly stated my argument, and that is the reason why it is preempted by the Occupational Safety and Health Act, because if you look at Gade and Atlas Roofing, if you take some state tort-like duty that's imposed, and instead of just, within the savings clause, allowing backward-looking damages for injury or illness to employees. And instead, try to apply some prospective standard that employers have to comply with, like the hazardous materials training that was at issue at Gade. That is absolutely preempted by the Occupational Safety and Health Act. That's why they can't do it, Your Honor. Among other reasons. Okay, thank you, Mr. Schwartz. We've taken you over, but you've reserved some time for it, but also we'll hear from you again. I did, thank you, Your Honor. Let's turn to the state appellee, Ms. Murdukeva, sorry, is that correct? Murdukeva. Okay, thank you very much. Thank you. May it please the court, Esther Murdukeva for the Attorney General. This court may affirm the dismissal of the complaint on any of the three grounds addressed in our brief. I'll start with Younger, because that's where much of the attention is focused today. Younger abstention is mandatory here because the state court civil enforcement action is a qualifying proceeding under Sprint. Mr. Schwartz is not correct. I'm sorry to jump in so fast, but you know something that no one else in this courtroom does, and maybe you're prepared to share, and maybe you're not. Is the state going to appeal the Court of Appeals decision in the state court action? We are, Your Honor, and I would just like to clarify something that Mr. Schwartz misstated. The New York State procedures do allow us to seek leave to appeal to the Court of Appeals in the appellate division from non-final decisions. We can also seek review in the Court of Appeals from final decisions. There has been a final judgment entered as to our complaint in the trial court proceedings. Mr. Schwartz referenced some counterclaims, but those counterclaims have actually not been severed yet. So it is not entirely clear whether they can proceed on those counterclaims. But irregardless of that, we have until June 9th to seek at least further review from the FIRS Department and request that the case be sent up to the Court of Appeals for further review. And we intend to do so. And your present intent is to do that. So holding this in obeyance to see whether that happens would be a waste of time, because it's going to happen. It will happen, Your Honor, and I cannot make any predictions about how long it will take for all appeals to be exhausted in this case. As I mentioned, we have some events. Unless the New York Court of Appeals overturns the judgment of the appellate division, what is at stake in this appeal if the New York Court of Appeals eventually turns down the application for review or sustains the decision of the appellate division? Why should we be laboring with all these problems, which are substantially moot? Well, Your Honor, I do not oppose the notion of holding this appeal in abeyance until the state court appellate proceedings have worked out. The key principle of younger abstention is comedy for state court proceedings. And I do think it would be appropriate to allow the state court appellate process to work its way out. I think the reason we care about this case is, as Mr. Schwartz said, the relief that Amazon seeks is much broader than enjoining our present enforcement action. What Amazon seeks is an injunction against the attorney general exercising any regulatory authority under state law with regard to workplace safety responses to COVID-19 and claims of retaliation against workers who protest working conditions. That relief is actually much broader than the- But those things are hypothetical because they're not happening now. And I don't know that there's Article III jurisdiction with respect to a suit to enjoin the attorney general from ever doing something that the attorney general is not doing. There's no injury with respect to things that the attorney general is not doing. Well, Your Honor, I think that goes to the merits of Amazon's claim and their injunctive relief that they seek. But with respect to this appeal, we intend to proceed with further review of the state court action. So there is a pending state court proceeding. We do think younger abstention is appropriate because there is a pending state court proceeding. And that state court proceeding qualifies under Sprint. Do you agree that the section 200, the health and safety claim, is moot? Or is that also something on which you're going to seek review? That is very much something on which we will seek review. The appellate division never received briefing on the mootness issue. That was a question they raised without the benefit of briefing from either party. The claim is not moot. I can explain why. So why is it not moot? I mean, it's true that your complaint seeks compliance with the public health guidance that the state agencies had issued about COVID-19. And that public health guidance has been rescinded. Your Honor. So what is Amazon doing right now that's out of compliance with Section 200 for coronavirus precautionary purposes? Your Honor, what Section 200 requires is an employer to take adequate and reasonable measures to create a safe workplace. We reference certain guidance in the complaint as a measure of reasonableness. But that guidance is not what we are enforcing. And that guidance is not the only measure of reasonableness that could possibly exist. There has been subsequent guidance from other authorities. There can be expert opinions that are presented about what is an adequate and reasonable workplace given the risks of COVID that are presented. Yeah, but the complaint focuses on these coronavirus precautions. I mean, can I just ask, what is Amazon doing right now that violates Section 200? Well, Your Honor, I think some of this is outside the record. But many of the practices that we identified in our complaint, such as the failure to engage in adequate contact tracing, the failure to provide adequate time for hygiene, the productivity metrics and the constant monitoring of productivity that limit employees' ability to engage in hygiene and sanitation measures to prevent the spread of COVID, that is all still ongoing. And we intend, one of the things we will argue to the First Department in any motion for further review, is that the claim is not moot because there are other metrics of reasonableness that could be used. The other reason it is not moot is that we- So what is that metric, just that you think it's not reasonable? I mean, is there something I can point to? It's very clear in the complaint you can point to the guidance and whether they're following that guidance. But if we wanted to determine whether it's moot or not, what is the metric that you now think is the appropriate one by which Amazon's current conduct should be judged? Well, Your Honor, there are certain subsequent guidance that we cited in our First Department brief. I would be happy to provide that in a letter to the court if that would be useful. We would also be able to- reasonableness is a legal question. There are many different ways to establish reasonableness. We could do so through expert opinions or through other forms of evidence that establish what a reasonable safety precaution might be. And I'd say the other reason that claim is not moot is that we seek disgorgement for past- for profits gained from past violations of Labor Law 200. And the withdrawal of the guidance can do nothing to moot the relief that we seek with respect to disgorgement. That relief would be live, even if you were to conclude that our claim was actually predicated on that guidance. But separately, the reason younger- I don't think the Court needs to resolve any of those issues in this case. The reason younger abstention applies here is that this is a qualifying civil enforcement proceeding under Sprint. Sprint does not require penalties. The word penalty does not exist in Sprint. And in fact- The word sanction is in Sprint. I mean, that doesn't seem very different. Well, the phrase used is to sanction and not a sanction. But I won't belabor that semantic difference. In Footnote 6- Do you think that there's a difference? Well, I- Between to sanction and sanction? I think there can be a broader reading of to sanction than sanction. But I will- I would note that Footnote 6 of Sprint expressly rejects the distinction that Amazon relies on. Footnote 6 says that some courts have applied a test as to whether a proceeding is coercive rather than remedial. And the court said, though we reference this dichotomy once in a footnote, we do not find the inquiry necessary or So Sprint itself rejected this dichotomy between punitive and remedial measures. What Sprint looked at are the circumstances in which a state's civil enforcement action is brought and whether those circumstances are akin to a criminal proceeding. Well, we need some kind of principle, right? Because it can't be that every civil enforcement action is subject to younger interdention. Because we know it's only a limited set that's akin to a criminal prosecution, right? So we need some kind of limiting principle, don't we? And I think the limiting principle is provided in Sprint itself. The Sprint says that you look to whether the state has brought the action as a party in its sovereign capacity following an investigation and the filing of formal complaints and charges. Those are really objective measures that can be used- Does that mean that every civil enforcement action by the state will be subject to younger interdention? Well, I think civil enforcement actions at least brought under 6312, which is a statute that the Attorney General is uniquely empowered to enforce, specifically to address persistent fraud and illegality in the conduct of business, and to seek relief, including injunctive relief, that would require the changing of practices. Amazon is wrong to argue that that injunctive relief that we seek is not a sanction. The purpose of the injunction is for Amazon to change its conduct, which we currently say is violating the law, and to adopt new practices. That because Section 63 allows the Attorney General to bring a civil action based on any violation of law, that basically, you know, in New York at least, because it has Section 63, there's not going to be any kind of state-initiated civil action that would not be subject to younger abstention. Well, I think this is a unique category of actions we're talking about. 6312 actions brought by the Attorney General. No other state agency is authorized to bring a 6312 action. There are limiting principles within 6312 itself. I guess the commissioner is not necessarily authorized to sue, but if it was like somehow an action by the commissioner, you would say, well, that's not necessarily 6312, so that might be different results. By the labor commissioner, Your Honor? Yeah. I think that would depend on the nature of the action. Diamond D was a case that involved, from this court, that involved an enforcement action brought by the DOL commissioner, and younger abstention did apply in that case. I think it would depend on the circumstances under which that action was initiated. No, but I'm talking about the fact, I mean, has the Attorney General ever sued to enforce Labor Law Section 200 before? Not to my knowledge, but the Attorney General enforces 6312 regularly. 6312 is the chief source of civil enforcement authority. Well, that's right, but that's for fraud and other illegality and fraud. I mean, you know, they use that for lots of purposes. But we do have this New York State case law that says that 6312 doesn't change the nature of the underlying claim. So do we think whenever it's, is your position, whenever it's Section 63, it's transformed into something else, and it's always going to be a punitive or a sanction, and therefore it's a particular abstention? Or is there something about this action to enforce Section 200 that makes it akin to a criminal proceeding? I don't think the fact that we are using 6312 with a reference to Labor Law 200 really makes a difference in the outcome. This claim is brought under 6312 under, which is a statute only the Attorney General can enforce. And our action meets all of the other criteria identified in Sprint. This was an action initiated by the State in its sovereign capacity following a year-long investigation, and it seeks to sanction Amazon for illegal conduct by forcing Amazon to change that conduct. And I gather you probably also pile on top of that the three middle sex factors as additional considerations? Yes, Your Honor. And I think we easily satisfy those factors. There is a pending state proceeding that implicates an important state interest that gives Amazon an opportunity to litigate its preemption defenses. If I may, I see that I'm over time, but if I may address the readily apparent or facially conclusive preemption issue, that exception has never actually been recognized by the Supreme Court or by this Court. Even if this Court does recognize it for the first time here, the other courts that have recognized it and the language from NOPC, which left the possibility of the exception open, requires that preemption be beyond a reasonable doubt. I think what NOPC says is that preemption has to be flagrantly violative. The state action has to be flagrantly violative of preemption. That is an exceedingly high standard. If this Court thinks that we have any reasonable probability of succeeding in reversing the appellate division's decision, why isn't that met here? So the Attorney General herself initially urged the NLRB to be involved in this case. And then the NLRB actually is involved in this case, in the Bryson case, right? Which is the exact same conduct, the exact same, he was terminated for the exact same, after the exact same protest, right? So don't we have a situation where the NLRB, we're not speculating, the NLRB in fact is exercising jurisdiction to determine this exact controversy? Your Honor, the NLRB is not. Smalls and Palmer are not a part of the Bryson proceeding. So maybe it's not the exact controversy, but it is an employee terminated after participating in the exact same protest. So what's the distinction between Bryson and Smalls and Palmer? Well, there are several distinctions. The first is that the state court whistleblower action, as Judge Robinson mentioned, it does not turn on whether the employees were retaliated against for participating in concerted activity. It turns on whether they were retaliated against because of the nature of their underlying complaints, which were reported state law violations. The NLRB proceeding, at most, turns- But the whistleblowing here occurred in a concerted activity, right? In a protest. But the elements of New York's state law claim do not turn on the circumstances in which the complaints were made. It is about the nature of the complaints, and whether Amazon- The elements are different, or because the state puts a different label on the cause of action, it's not preempted, right? But, Your Honor, what we're doing here is not putting a different label on the same cause of action as under the NLRB. Again, the NLRB has no proceeding with respect to Smalls or Palmer, and can no longer have such a proceeding because the statute of limitations has run. Whether or not Amazon retaliated against Smalls or Palmer, and for what reason, is not a matter that is at issue in the Bryson proceeding. The ALJ has already issued a decision- Okay, but you don't seem to dispute that the question of whether Smalls and Palmer were retaliated against for participating in the protest would be preempted, right? Because that's a concerted, a protected concerted activity, right? I think a claim that is based on Amazon's specific intent to retaliate because of participation in concerted activity would fall within the NLRB. So you're saying, because the state is saying that the retaliation is not because of the protest, but because of the whistleblowing, it's therefore not preempted. That's right, Your Honor, or at most that- How can you draw that line? You're saying, in order to show that they were retaliated against because of concerted activity, Amazon would have to object to the public nature of the protest as opposed to the substance of the protest. But if they were really objecting to the substance of the protest, it would be whistleblowing and not preempted. But if they were objecting to the form of the protest, that's federal? That's right, because what the federal- But that means the NLRB, when it adjudicates these claims, doesn't look at whether an employer is retaliating against somebody because of the substance of their protest, but only because of the form of the protest. Well, the NLRB would look to whether there is protected concerted activity for mutual aid and protection. So there would be some evaluation of what the substance is, but the retaliation, what the NLRB is really focused on, is the retaliation against participating in concerted activity. I mean, mutual aid and protection doesn't actually turn on whether it's public facing, right? If employees all got together and just sort of said, hey, spread the word, we think Amazon is not doing enough for coronavirus protections, that would still be concerted activity for mutual aid and protection, right? I'm sorry, I may have misspoken. I don't think it turns on whether it is public facing. The NLRA's claim, the NLRA turns on whether it is concerted, whether the employees are acting together. What Mr. Schwartz said earlier is a state bar retaliation claim can proceed if it is just one individual proceeding. But what the consequence of that ruling would be is that dozens of state anti-retaliation provisions would be deemed preempted if more than one employee complains of a state bar violation at once. And that is not the line that Garvin was intended to police. That is not the- Because they complain to each other. So who are you saying they blew the whistle to, the public? To management, to the media, and to government officials. But they did that in organizing a protest together, right? They did so on certain occasions. But the point is that the complaints- I'm sorry, was there a time when they were doing whistleblowing that was not also concerted activity? There are no allegations in the complaint that the whistleblowing was ever done on an individual basis. I agree with that. But what I'm trying to say is that the nature of our whistleblowing claim doesn't care as to whether they made those complaints individually or en masse. And it shouldn't because our interest in enforcing those retaliation provisions is to enforce the underlying labor laws. Now I appreciate that you want to do that, right? But I'm sure that whenever a state authority wants to enforce state law, they're upset if it is preempted. I mean, that's just the nature of federal preemption. I'm trying to sort of identify if there is some claim or some conduct that you're seeking redress for that's not covered by the NLRA. And if you're saying that everything they did here in order to effectuate the whistleblowing was in fact protected concerted activity, then isn't the NLRB going to decide whether there's redress for that? It is not, Your Honor. I understand that it's going to do that in the context of Bryson. But the fact that it could do that in the context of Smalls and Palmer means that it's preempted, right? No, Your Honor, because if we are in the world of arguably preempted, which I think we are by the nature of this conversation, then you would look to the— I don't know. Actually, so if there isn't a meaningful distinction between Bryson on the one hand and Smalls and Palmer on the other hand, why is it arguable? It means that the NLRB actually did exercise authority to adjudicate that case. Well, I think there is a very meaningful distinction, Your Honor. The reasons for why Amazon took adverse actions against Bryson or Palmer might have nothing to do with Smalls and Palmer themselves. The ALJ has actually issued a decision in the Bryson case. And the primary event that it says triggered the retaliation was an event that didn't include Smalls or Palmer at all. It was a dispute that Bryson had with another Amazon employee. That ALJ decision made absolutely no findings about what the basis for Amazon's termination of Smalls or adverse actions against Palmer was. But your allegation is that Amazon took action against Smalls and Palmer because of their participation in the protest, right? That is not our argument, Your Honor. What we are saying is that Amazon's intent was to retaliate against Smalls and Palmer for reporting state law violations. And they reported state law violations in the protest. That was the context in which they reported the state law violations. But our argument as to why that... Okay, so if there's some individual issue, if there's some other reason why they actually took action against Smalls and Palmer, that would be a defense by Amazon. But your allegation is they actually did it because of the issues with Amazon that they raised, right? Certainly, Your Honor. But I don't see how that would trigger a conflict with any NLRB proceeding. The question in an NLRB proceeding, a hypothetical one which cannot be brought at this point, would be whether Amazon had this specific intent to retaliate against concerted activity. I mean, so you're acknowledging there could be an NLRB proceeding about retaliation against Smalls and Palmer because of participation in the protest. So could the NLRB issue the following decision? It could say, we find that Smalls and Palmer participated in the protest, criticized Amazon's coronavirus precautions. Because Amazon was so outraged about their inadequate coronavirus precautions being brought to light, they terminated Smalls and Palmer. That's a violation of the NLRA. I think that finding would have to be tied to the elements of an NLRA violation. Well, I understand. I'm sort of using shorthand. But that would be an NLRA violation, wouldn't it be? It could be an NLRA violation. But that does not by itself establish preemption. Even if we are in the world of arguably covered by the NLRA, then we look to the local interest exception. And what this Court made clear in Healthcare Association v. Pataki and what other courts have made clear is that there is no field preemption in workplace safety issues with respect to the NLRA v. the states. There is. Sorry, I'm sorry. In the absence of preemption, would there be issue preclusion as between the two tracks? So in other words, if we agreed with you and said, you know what? The elements of the NLR case are sufficiently distinct from the state case that it wouldn't be inconsistent to have divergent outcomes. But within the two proceedings, you might have findings as to motivations for retaliation, etc. Would a finding in the first proceeding to get to that issue be preclusive as to the proceeding in the other silo? Well, Your Honor, I think that is a hypothetical question in this case because no NLRB proceeding can be brought with respect to Smalls and Palmer. But to the extent you have satisfied the requirements for collateral estoppel, for issue preclusion, which, as you know, require a final judgment, require an adequacy of an opportunity to litigate the issues, then there may be issue preclusion. But I guess I don't see the likelihood of that happening in this case, because there can be no other proceeding in the agency- I understand, the concern is whether there's a potential conflict between the results of these two kinds of proceedings, and that's driving some of the preemption analysis. And I'm just trying to get into the weeds to figure out whether, in fact, there really is a conflict or whether issue preclusion would resolve the sort of subsidiary conflicts that would arise from different fact findings. Whereas the legal distinction is clear, they have clearly different elements. Right, and I think what I would point the court to is that the intent elements and the findings would be different. A finding in an NLRB proceeding would be that Amazon acted with the intent to retaliate against a concerted activity. A finding in a state court proceeding would be that Amazon acted with the intent to retaliate against the reporting of state law violations. Those are- They can, to act to retaliate against concerted activity because they're outraged that the concerted activity revealed state law violations, couldn't they? That would still be, the NLRB would still say that that's liability under the NLRA, right? Well, the liability would be for retaliating against a concerted activity, because that would be the intent finding. You're putting different labels on the same conduct, aren't you? Respectfully, I disagree, Your Honor. I think what the elements do actually matter, because the factual findings that would be made in either proceedings would be tied to those elements. But if the fact is, in fact, that Smalls and Palmer announced to the world together at a protest, Amazon's committing state law violations, and then Amazon retaliates against them, that's a prohibited labor practice under the NLRA, isn't it? And it could be that Amazon, let's say the NLRB makes a finding. Amazon thinks it's great for employees to engage together in public protest. But they were specifically outraged at the substance of what they were saying in this protest, and that's why they retaliated. And therefore, there's liability, right? The NLRB could say that, couldn't it? I don't think it could, Your Honor. The specific intent element of an NLRB Section 8 claim would require that this specific intent be tied to the participation in concerted activities specifically. So there would have to be a finding that the intent was tied to the concerted nature of activities. So you're saying that under the NLRA, Amazon can retaliate against employees for revealing state law violations as long as they're not specifically upset that they did it in concert. What I'm saying is that there would have to be a finding that the intent was specifically tied to retaliate for the participation in the concerted activity. You could not have a Section 8 violation without tying intent to the concerted activity. Well, I guess I'll just answer that fact pattern. So if Amazon, in fact, it's clear that Amazon doesn't mind workers getting together to protest. Maybe they do it on social issues, whatever. Amazon thinks that that's fine. But Amazon actually was just outraged at the substance of what Smalls and Palmer said, because they revealed state law violations. And Amazon was angry about that, retaliating against that, because of the substance of what they revealed. Is that not a violation? I don't think that's a Section 8 claim without a finding that there, because what Section 8 protects is the participation in concerted activity. So therefore, the unfair labor practice has to be tied to prohibition or some sort of penalty imposed because of the participation in the concerted activity. And I guess to take this back to the higher level, these are all issues that have been litigated in the state court that will continue to be litigated in the state court. The question for this court is whether preemption is facially conclusive, which is an extremely high bar. What the 11th Circuit said in Hughes is that if there is any arguable justification for there not being preemption, or if there's any doubt at all, then the exception does not apply. And younger abstention is mandatory so long as- Can I get, I get the big picture thing, but I want to go back. You've discussed in a granular level the elements of the NLRA claim, which requires that the mens rea be sort of focused on the concerted activity. In section 215, when it lists the various kinds of activities, the retaliation for which would trigger that statute, there's a bunch of different things, like making a formal report, instituting an action. Which of these subsections is the subsection pursuant to which the Attorney General is proceeding in the whistleblower retaliation claim? I'm sorry, Your Honor, I actually don't have the text in front of me, but I believe it is the subsection one, which talks about making a formal report to government agencies. Okay, so this isn't, if that were true, then it wouldn't even be about the protest. If it were about a formal report to a government agency, there must be some other report that is the gravamen of the retaliation claim, not the protesting that happened with fellow Amazon employees. Well, our claims are also based on reports that were made that were brought to the attention of governments through media reports and through other types of allegations. The report they made was via the protest, right? There were also reports that were made at management meetings, directly to management, that those are cited in our complaints as well. And the New York statutes do allow- Did they submit a report or they protested at the management meeting? I believe it was an oral. So employees showed up at the management meeting to say, we think, right. So that's also a protest. I think maybe this may be a semantic difference, but that is a report of a perceived violation of state law. I guess maybe I'll put it a different way. Is there any report that was made to government of state law violations by Amazon that was not also concerted activity? Again, I'm not, I do not think that there are allegations in the complaint of reports that were made to government entities outside of outside of the statements that were made to media that were brought to the attention of the government and outside of the management meeting, but that is my, that is my recollection of the complaint. There may be others, but again, again, I don't think that matters because our state law claim does not turn on that distinction. And again, for purposes of this proceeding, the question is whether preemption is facially conclusive. And the fact that we have to look at the facts of our claim, the nature of preemption as it has been found in other cases, and apply, and resolve these kind of difficult, complicated issues of state law and federal law, means that preemption is not facially conclusive, and that would be the only basis if this court were to recognize it to abstain, to avoid abstention under Youngberg. Okay, thank you very much. We'll turn back to the appellant for rebuttal. Thank you, your honor. Number one, the conduct being regulated is exactly the same, and it's facially apparent. If you look at the Attorney General's complaint, as I think my colleague just conceded, the specific activity that is alleged to have been protected in the cause of the retaliation, were protests at management meetings, interrupting the meetings with groups of employees, including Bryson, Palmer, and Smalls together, and a protest in the parking lot. What about this question that I just asked opposing counsel about whether it would violate the NLRA if Amazon was upset at the substance of what was revealed through concerted activity, but was not specifically upset about the concerted activity? Is that permissible under the NLRA? Amazon can retaliate against somebody for revealing state law violations as long as it's not specifically objecting to the concerted nature of the way they made the revelations? No, your honor. The National Labor Relations Board, whose jurisdiction is being protected here, has taken the position that when employees protest together worker safety, saying that the employer is not complying with safety guidelines, that that is, in fact, protected under the National Labor Relations Act. And as your honor is aware, under Garmin, it's whether the activity is regulated or can fairly be assumed to be regulated. And then an additional category, there's even a presumption in favor of preemption if it's even arguably subject to the NLRB. And the two cases that we cite, Chalk and the, I apologize, the Ninth Circuit case, Bud Antle, are both cases where there were different labels, but the same or even similar facts, Bud Antle is just sort of adjacent facts. They are both found readily apparent, even under that arguably subject to the NLRB. Can I ask about another issue? So opposing counsel mentioned that on the labor law section 200 claim, the state also seeks disgorgement. So how can the 200 claim be moot if they're seeking disgorgement for past conduct? So number one, disgorgement is not an available remedy under 6312, so that remedy is not available. And the remedy itself is not separate from the cause of action. So if the cause of action is moot- 6312 says restitution, you're saying disgorgement is different from restitution. Disgorgement is much different from restitution, your honor. Disgorgement is not authorized by 6312. It says restitution and damages. That's correct. You're saying that language would not cover disgorgement? That's correct, your honor. But the appellate division didn't say that, right? They didn't have to reach that issue. Well, they said that the 200 claim was moot because the public health guidance has been rescinded. But even if the public health guidance has been rescinded and there's no basis for a forward-looking injunction, there still might be a basis for the backward-looking disgorgement. Well, again, disgorgement's not authorized, so there is no basis for that. This is a case since, yes, your honor. To the extent that, whether or not it's moot in the state court proceeding, to the extent that you're seeking an order from the federal courts to essentially enjoin the attorney general from proceeding down this road, then I'm assuming that given what we've just heard from the attorney general, that's not moot. That's correct, your honor, although again, I think the most practical use of judicial resources here would be to hold this appeal in abeyance until that state appellate proceeding plays out. Because at a minimum, that's going to be narrowed down. In other words, if you win in the state proceeding, then you're good. And we'll hang back, essentially exercising younger abstention. But then if you lose, you've got this case to come back to, to try to turn that around? Your honor, I'm not- Isn't that the same thing as doing younger abstention? I mean, you're saying that you would be okay if we just waited for the state proceedings to end it? I mean, isn't that what younger abstention does? All I'm saying, your honor, is that I'm okay with waiting for the state appellate proceedings to end, where the attorney general has already had a full and fair opportunity to litigate the preemption question. Mr. Cesar, just to be precise, when you say you're saying we can wait until the state appellate proceedings end, you mean a motion for reconsideration to the appellate division? That's correct, your honor. But the state has just represented that they're going to seek review in the New York Court of Appeals, but you're saying we should not wait for that? I think it would be fine to wait for that petition to be adjudicated as well. We don't think the Court of Appeals has jurisdiction. If there's a petition for relief of an interlocutory, like before there's final judgment, but then they also said that they're going to seek, even if they don't get that, they're going to seek review after final judgment. Should we wait for that? No, your honor, because at that point, we're being subjected to the state proceedings on matters that are outside state authority. I'm not sure- So you're just saying that we should wait for the adjudication of this recent decision by the appellate division? That's correct, your honor. Okay. If we were to exercise younger abstention rather than holding it in advance, if we were to actually say no, actually we are going to exercise younger abstention, the proceedings played themselves out. And you were dissatisfied with, let's assume the Court of Appeals took the case in reverse. At that point, you'd be able to ask the US Supreme Court to step in and grant cert. But if we hold it in abeyance, you'd be able to come to us. Is that the difference between those two paths? That is correct, your honor. Your honor, what we're saying is that we believe the trial court here, the federal district court, again, we sued first in the federal district court, had jurisdiction under Shaw to issue a federal injunction prohibiting the attorney general from exceeding her authority in matters that are preempted by federal law. We believe the district court erred in the three respects that I identified, because it's not akin to a criminal prosecution, because the district court didn't even consider preemption in the first instance. So at a minimum, I think you need to vacate and remand for Judge Kogan to consider that in the first instance. And because we adequately pled bad faith. All of those are reasons why younger does not apply under Sprint. I think that's very clear, your honor. 6312 is not an end run. The state courts have been quite clear that 6312 is a remedy. It doesn't change the underlying nature of the causes of action. These are civil causes of action routinely brought by civil plaintiffs. They are not brought to sanction or as a sanction. But 6312 authorizes this injunctive relief that you wouldn't otherwise get under the underlying statutes. That's a remedy and not a cause of action, your honor. And again, we don't believe it authorizes the injunctive relief in these circumstances. I understand, but if state law in fact authorizes a special remedy that only the state can receive for the same violation of law, maybe that makes it seem like a sanction. And by that reasoning, then any cause of action brought by the Attorney General. And remember, it's not just fraud, it's repeated illegality, which the Attorney General takes the position if there's more than one instance. Presumably here, what they're relying on is that the Smalls and Palmer. These are garden variety employment cases. 6312 does not, what we heard from the Attorney General is that younger abstention should apply to any action that the Attorney General brings under 6312, immune from federal jurisdiction. That's not what Sprint says. The court has an unflagging duty to exercise its jurisdiction when the Attorney General exceeds her authority. Really apparent, if we think that preemption is readily apparent with respect to the retaliation claims, but not the section 200 claims, what should the result be? As a matter of efficiency, your honor, I think the court should keep the entire case. Although I am aware of precedents where the court has abstained under Younger, where one cause of action was not readily apparent and not abstained for other causes of action. I also agree with the first department that the cause of action under section 200 is clearly moved. I think as you heard from my colleague on behalf of the Attorney General, this is now a case in search of a theory. They're arguing to other courts that cases brought against the state under the state of emergency and guidance that has now been withdrawn are moved. And in this case actually, as my colleague pointed out, is you trying to restrain the New York Attorney General from investigating you. And the Attorney General just represented that they're still going to pursue section 200 violations against you. So how could it be moved if this is not actually, before us is not the action by the Attorney General to enforce section 200. Before us is the action by Amazon.com to restrain the Attorney General from doing a section 200 investigation. And they are doing that, right? Well, I don't know what they're doing. I don't think we got a clear answer to that question. They've done the investigation and they're prosecuting the case, but that's ongoing, is it not? I don't think we got a clear answer to that question from the Attorney General. But yes, I agree, your honor. I think we have standing to request federal injunctive relief under Shaw to prohibit the Attorney General from purporting to exercise jurisdiction over matters that are reserved to the federal government under the Supremacy Clause. Okay, thank you very much, Mr. Schwartz. The case is submitted. Thank